# EXHIBIT 1

## STATE OF MINNESOTA
## UCC-1 FINANCING STATEMENT

For
Filing
Officer

20680591

98 SEP 14 AM 8:00

SEC. OF STATE
MINNESOTA

This statement is presented for filing pursuant to Minnesota Uniform Commercial Code Minnesota
Statutes Chapter 336.9-402   (Type in Black Ink)

| 1. Individual Debtor - Last Name | | First Name | Middle I. |
|---|---|---|---|
| Social Security # | Mailing Address | | |
| City | | State | Zip Code |

| 2. Individual Debtor - Last Name | | First Name | Middle I. |
|---|---|---|---|
| Social Security # | Mailing Address | | |
| City | | State | Zip Code |

3. Business Debtor - Name

VON RO CORPORATION

| Fed. ID # | Mailing Address | | |
|---|---|---|---|
| 8045 | NORTH HIGHWAY 65 | | |
| City | | State | Zip Code |
| MORA | | MN | 55051 |

| 4. Secured Party Name | 5. Assignee of Secured Party |
|---|---|
| KANABEC STATE BANK | |
| Mailing Address | Mailing Address |
| 124 MAPLE AVENUE EAST | |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| MORA | MN | 55051 | | | |

6. This financing statement covers the following types or items of property. (If crops are covered describe the real estate and list the name of record owner.)

See attached sheet for complete description.

_____ Debtor is a transmitting utility
as defined by Minnesota Statutes Chapter 336.9-105

RETURN ACKNOWLEDGEMENT COPY TO: (name and address)

KANABEC STATE BANK
124 MAPLE AVENUE EAST
MORA, MN 55051

TERMINATION STATEMENT: This statement of Termination of
Financing is presented to a Filing Officer pursuant to the Uniform
Commercial Code. The Secured Party certifies that the Secured Party
no longer claims a security interest under the financing statement
bearing the file number shown above.

(Signature of Secured Party or Assignee of Record. Must be signed)

Date _____

Please do not type outside the bracketed area.

(3) Acknowledgment Copy (06920819 Rev 5/93)   Standard Form Approved by Secretary of State

Bankers Systems, Inc., St. Cloud, MN Form UCC-1-LAZ-MN 10/29/93

**INSTRUCTIONS**
1. Remove Secured Party and Debtor copies and send other 3 copies to the filing officer.
2. At the time of original filing, filing officer will return the third (3rd) copy as an acknowledgment.
3. When filling out this form be sure to indicate state name in appropriate space.
4. Be sure to file this form with original financing statement.

20680591

## ADDENDUM TO UNIFORM COMMERCIAL CODE FINANCING STATEMENT

STATE OF ........Minnesota........................     TOTAL NUMBER OF SHEETS ...........

XX  The Financing Statement to which this addendum is attached covers the types (or items) of property indicated below which I now own and that I may own in the future, together with all parts, accessories, repairs, improvements, and accessions to the property, wherever it is located, and all proceeds and products from the property:

XX  Inventory: All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

XX  Equipment: All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. Any equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

☐  Farm Products: All farm products including, but not limited to:
    (a) all poultry and livestock and their young, along with their products, produce and replacements;
    (b) all crops, annual or perennial, and all products of the crops; and
    (c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

XX  Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment: All rights I have now or may have in the future to the payment of money including, but not limited to:
    (a) payment for goods sold or leased or for services rendered, whether or not I have earned such payment by performance; and
    (b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
    The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

XX  General Intangibles: All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

☐  Government Payments and Programs: All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any pre-existing, current or future Federal or state governmental program (including but not limited to all programs administered by the Commodity Credit Corporation and the ASCS.)

| | | |
|---|---|---|
| VON RO CORPORATION | KANABEC STATE BANK | 2 |
| DEBTOR | SECURED PARTY | SHEET No. |

(3) **FILING OFFICER COPY - ACKNOWLEDGMENT** - Filing Officer is requested to note file number, date and hour of filing on this copy and return it to the person filing, as an acknowledgment.

© 1989 Bankers Systems, Inc., St. Cloud, MN  Form UCC-ADD-LAZ  11/23/93     (page 1 of 1)

# EXHIBIT 2

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
320-679-3131

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

KANABEC STATE BANK
124 MAPLE AVENUE EAST
MORA, MN 55051

Filing NO: 20037855606
Filing Date: 2003/06/26
Filing Time: 12:32 PM
State of Minnesota
Processing Office: Isanti
Filed by: lincor30

THE AB

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME VON RO CORPORATION | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 1c. MAILING ADDRESS NORTH HIGHWAY 65 | CITY MORA | STATE MN | POSTAL CODE 55051 | COUNTRY |

| 1d. TAX ID #: SSN OR EIN 8045 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION MN | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only <u>one</u> debtor name (2a or 2b) - do not abbreviate or combine names          [X] NONE

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only <u>one</u> secured party name (3a or 3b)          ☐ NONE

| 3a. ORGANIZATION'S NAME KANABEC STATE BANK | | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 3c. MAILING ADDRESS 124 MAPLE AVENUE EAST | CITY MORA | STATE MN | POSTAL CODE 55051 | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:
"IN LIEU OF"
OFFICE FILED IN: SECRETARY OF STATE
ORIGINALLY FILED ON & #: SEPTEMBER 14, 1998, #2068059
LAST CONTINUATION FILED DATE:
PRE JULY 1, 2001 FINANCING STATEMENT REMAINS IN EFFECT

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

ACKNOWLEDGMENT COPY -- NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)          Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LAZ 5/30/2001

# EXHIBIT 3

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

    Greater MN Credit Union
    112 South Lake Street
    Mora, MN 55051

    Attn: Dalene Anderson

Filing NO: 20051666704
Filing Date: 2005/05/26
Filing Time: 9:19 AM
State of Minnesota
Processing Office: Secretary of State
Filed by: fisje01

THE ABO

1a. INITIAL FINANCING STATEMENT FILE #

    20037855606

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Greater MN Credit Union | | | |
| | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 112 South Lake Street | Mora | MN | 55051 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Kanabec State Bank | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA

    Von Ro Corporation

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)     Bankers Systems, Inc., St. Cloud, MN Form UCC-3 6/1/2001

# EXHIBIT 3A

UCC FINANCING STATEMENT AMENDMENT

| A. NAME & PHONE OF CONTACT AT FILER (optional) | Filing Number: | 20081213127 |
|---|---|---|
| | Filing Date: | 06/11/2008 |
| B. SEND ACKNOWLEDGMENT TO: (Name and Address) | Filing Time: | 12:32 pm |
| GREATER MINNESOTA CREDIT UNION | Processing Office: | State of Minnesota |
| 112 S LAKE STR | | Secretary of State |
| MORA, MN 55051 | Filed By: | UCCOnlineFiling |

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed (for record) or recorded in the REAL ESTATE RECORDS. |
|---|---|
| 20037855606 | |

2. ☐ **TERMINATION**: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION**: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party thorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial)**: Give name of assignee in item 7a or 7b  and address of assignee in item 7c; and also give name of assignor in Item 9.

5. **AMENDMENT (PARTY INFORMATION)**: This Amendment affects ☐ Debtor  or  ☐ Secured Party of Record.  Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.     ☐ DELETE name: Give record name to be deleted in item 6a or 6b.     ☐ ADD name: Complete item  7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION
   6a. ORGANIZATION'S NAME

| |
|---|
| |

7. CHANGED (NEW) OR ADDED INFORMATION
   7a. ORGANIZATION'S NAME

| |
|---|
| |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. Tax ID #: SSN or EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE)**: check only one box

Describe collateral ☐ deleted or  ☐ added, or give entire  ☐ restated collateral description, or describe collateral  ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor,  or if this a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
   9a. ORGANIZATION'S NAME

| |
|---|
| |

10. OPTIONAL FILER REFERENCE DATA
    20037855606

UCC FINANCING STATEMENT AMENDMENT

| A. NAME & PHONE OF CONTACT AT FILER (optional) | | Filing Number: | 20133227790 |
|---|---|---|---|

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GREATER MINNESOTA CREDIT UNION

112 S LAKE STR

MORA, MN 55051

| Filing Date: | 05/08/2013 |
|---|---|
| Filing Time: | 8:26 am |
| Processing Office: | State of Minnesota |
| | Secretary of State |
| Filed By: | UCCOnlineFiling |

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|
| 20037855606 | ☐ | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party thorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in Item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of Record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.     ☐ DELETE name: Give record name to be deleted in item 6a or 6b.     ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. **CURRENT RECORD INFORMATION**
6a. ORGANIZATION'S NAME

| |
|---|

7. **CHANGED (NEW) OR ADDED INFORMATION**
7a. ORGANIZATION'S NAME

| |
|---|

| 7c. | MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| | | | | | |

| 7d. | Tax ID #: SSN or EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME

| |
|---|

10. OPTIONAL FILER REFERENCE DATA

# EXHIBIT 4

Stephen J. Creasey

| | |
|---|---|
| From: | Joseph Newton [josephnewton@yahoo.com] |
| t: | Saturday, November 30, 2013 8:50 AM |
| To: | Stephen J. Creasey |
| Subject: | A plea for RVs . |

My wife and I had a baby in April. We knew before then we could not afford the added cost of day care for an infant on top of the cost of day care for our other daughter. Donovan Hardy of VonRo said he could help me out if I bought some RVs from him, so we did. I had no idea that he owed so much money. Then Greater MN Credit Union took my RVs even though I do not owe them any money. Now my wife and I have $80,000 worth of loans for RVs we don't have. We have been living off of our credits cards so we can afford to make the loan payments plus day care. I have to pay for day care in order to work. I owe more on my house than what it is worth. I'm putting myself farther in to debt each month. If I don't get my RVs back, I may never recover financially.

Is there anything I can do to get my RVs back? Their details are below.

Best regards,
Joseph Newton

2013 Woodland Park American Park Model AP100L (VIN 1W9BP03S9D2046733)
2013 Enterra by Cruiser RV Model 316RK5 (VIN 5RXTF3128D2200339)

# EXHIBIT 5

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $43,855.00 | 01-25-2013 | 07-25-2013 | 68055 | 84 / 041 | 3078 | 143 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** DONOVAN P. HARDY, JOSEPH J. NEWTON and
TRACY L. NEWTON
536 CLARK STREET
MORA, MN 55051

**Lender:** STEARNS BANK NATIONAL ASSOCIATION
PINE CITY OFFICE
600 HILLSIDE AVE SW
PINE CITY, MN 55063

**Principal Amount: $43,855.00**      **Interest Rate: 6.500%**      **Date of Note: January 25, 2013**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to STEARNS BANK NATIONAL ASSOCIATION ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-three Thousand Eight Hundred Fifty-five & 00/100 Dollars ($43,855.00), together with interest on the unpaid principal balance from January 25, 2013, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.500% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in full immediately upon Lender's demand. If no demand is made, I will pay this loan in one principal payment of $43,855.00 plus interest on July 25, 2013. This payment due on July 25, 2013, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. I will pay Lender at Lender's address shown above or at such other place as Lender may require in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. If I do make any payments before they are due, I understand that unless Lender agrees otherwise in writing, I will still have to continue to make my regular payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: STEARNS BANK NATIONAL ASSOCIATION, 4191 SO 2ND ST ST CLOUD, MN 56302-7338.

**LATE CHARGE.** If a payment is 11 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default in Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** If I am in default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay

Loan No: 68055

## PROMISSORY NOTE
### (Continued)

Page 2

or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Note is secured by COLLATERAL AS DESCRIBED IN THE FOLLOWING DOCUMENTS: SECURITY AGREEMENT DATED JANUARY 25, 2013 EXECUTED BY VON RO CORPORATION IN FAVOR OF LENDER.

**ELECTRONIC IMAGING.** BORROWER AGREES THAT ELECTRONICALLY REPRODUCED COPIES OF THE ORIGINAL PROMISSORY NOTE AND ALL ACCOMPANYING LOAN DOCUMENTS WILL BE TREATED AS ORIGINALS AND WILL BE ADMISSIBLE AS EVIDENCE TO THIS AGREEMENT. BORROWER AGREES NOT TO CHALLENGE THE AUTHENTICITY OF THE ELECTRONICALLY REPRODUCED COPIES.

**COUNTERPART SIGNATURES.** THIS DOCUMENT MAY BE SIGNED IN ANY NUMBER OF COUNTERPARTS ALL OF WHICH COMBINED SHALL BE CONSIDERED ONE AND THE SAME DOCUMENT.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of me shall not affect Lender's right to declare a default and to exercise its rights and remedies. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x _____
DONOVAN P. HARDY

x _____
JOSEPH J. NEWTON

x _____
TRACY L. NEWTON

# EXHIBIT 6

Cabak 03.23.2015 100

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $43,855.00 | 01-25-2013 | 07-25-2013 | 68055 | 54 / 041 | 3078 | 143 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

SCANNED

| | | | |
|---|---|---|---|
| **Borrower:** | DONOVAN P. HARDY, JOSEPH J. NEWTON and TRACY L. NEWTON<br>536 CLARK STREET<br>MORA, MN 55051 | **Lender:** | STEARNS BANK NATIONAL ASSOCIATION<br>PINE CITY OFFICE<br>600 HILLSIDE AVE SW<br>PINE CITY, MN 55063 |
| **Grantor:** | VON RO CORPORATION<br>536 CLARK STREET<br>MORA, MN 55051 | | |

THIS COMMERCIAL SECURITY AGREEMENT dated January 25, 2013, is made and executed among VON RO CORPORATION ("Grantor"); DONOVAN P. HARDY, JOSEPH J. NEWTON and TRACY L. NEWTON ("Borrower"); and STEARNS BANK NATIONAL ASSOCIATION ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2013 WOODLAND PARK AP105L (VIN 1W9BP03S3D2046713)

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 68055                                                                                                      Page 2

**No Violation.**  The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.**  To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.  There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.**  Except for vehicles, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender.  If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel.  Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following:  (1)  all real property Grantor owns or is purchasing; (2)  all real property Grantor is renting or leasing;  (3)  all storage facilities Grantor owns, rents, leases, or uses; and  (4)  all other properties where Collateral is or may be located.

**Removal of the Collateral.**  Except in the ordinary course of Grantor's business,  Grantor shall not remove the Collateral from its existing location without Lender's prior written consent.  To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Minnesota, without Lender's prior written consent.  Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.**  Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral.  Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender.  This includes security interests even if junior in right to the security interests granted under this Agreement.  Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition.  Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.**  Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement.  No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented.  Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.**  Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect.  Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.**  Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.**  Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion.  If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral.  In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.  Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.**  Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity.  Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.**  Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances.  Grantor hereby (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement.  This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.**  Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require.  If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

Cabak 05.23.2015  101

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 68055

Page 3

---

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1,500.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of

COMMERCIAL SECURITY AGREEMENT
(Continued)

the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Minnesota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**COUNTERPART SIGNATURES.** THIS DOCUMENT MAY BE SIGNED IN ANY NUMBER OF COUNTERPARTS ALL OF WHICH COMBINED SHALL BE CONSIDERED ONE AND THE SAME DOCUMENT.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and

COMMERCIAL SECURITY AGREEMENT
(Continued)

Loan No: 68055

legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Minnesota.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means DONOVAN P. HARDY, JOSEPH J. NEWTON and TRACY L. NEWTON and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto, or common law, and shall also include pollutants, contaminants, polychlorinated biphenyls, asbestos, urea formaldehyde, petroleum and petroleum products, and agricultural chemicals.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means VON RO CORPORATION.

Cabak 03.23.2015  104

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means STEARNS BANK NATIONAL ASSOCIATION, its successors and assigns.

**Note.** The word "Note" means the Note dated January 25, 2013 and executed by DONOVAN P. HARDY, JOSEPH J. NEWTON and TRACY L. NEWTON in the principal amount of $43,855.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 25, 2013.

GRANTOR:

VON RO CORPORATION

By: _____

DONOVAN P. HARDY, President of VON RO
CORPORATION

BORROWER:

X _____

DONOVAN P. HARDY, Individually

X _____

JOSEPH J. NEWTON, Individually

X _____

TRACY L. NEWTON, Individually

LASER PRO Lending, Ver. 12.4.0.003 Copr. Harland Financial Solutions, Inc. 1997, 2013. All Rights Reserved. - MN  C:\LASERPRO\CFI\LPL\E40.FC  TR-10840  PR-12

# EXHIBIT 7

Von Ro Corporation   Account #109997

Page 8 of 9





2/7/2013   0   $46,253.76

2/7/2013   0   $43,900.00

2/7/2013   20812   $2,411.00

2/7/2013   271   $42.76

2/5/2013   0   $12,578.00

2/5/2013   0   $12,578.00

2/4/2013   0   $4,200.00

2/4/2013   0   $4,200.00

1/29/2013   0   $20,100.00

1/29/2013   0   $20,100.00

1/28/2013   0   $5,000.00

1/28/2013   0   $5,000.00

# EXHIBIT 8

## VON RO PARK MODEL
### 536 Clark Street-Mora, Mn 55051 (mailing address)
### 320-679-5173

Buyers: First, Middle, and Last
Joseph John Newton

Address:
13992 Wellington Drive

City: Eden Prairie    State: Mn    Zip Code: 55347    County: Hennepin    Financed In

Home Phone: 952-930-9559    Work Phone:    Other: Cell 612-720-4847

Principal Buyers Date of Birth: 72    Principal Buyers Driver's License No: 2610

Co-Buyers Date of Birth:    Co-Buyers Driver's License No:

Insurance Company:    Policy Number:

**UNIT SOLD**   (NEW)   OR   USED

Year: 2013   Make: Woodland Park American Park   Model: AP100L   VIN No: 1W9BP03S9D2046733

License No.:    Lienholder: BMO Harris Bank NA
PO Box 660310
Sacramento, CA 95866

**TRADE-IN**

Year:    Make:    Model:    Length:

License No.:    Lienholder:

| ADDITIONAL NOTES: | | |
|---|---|---|
| -includes delivery, blocking, leveling, and hooking up to sewer | Base Price | $49,823 |
| -moving and/or raising or lowering decks not included | Trade In | |
| -setup does not include steps, skirting, tiedowns or water hose those items are additional costs | Difference | |
| | Sales Tax | $2,226.59 |
| -gas connection, propane tanks, and regulator not included | Doc Fee | $50 |
| -power cord reaches original length only-power cord extensions are extra cost | Lic & Title | $60 |
| | Subtotal | $52,159.59 |
| -free service calls for the warranty period of one year from date of delivery of park model | Additional Pacs | |
| | Total Price | $52,159.59 |

Paid
8,000
down
still 1060

1. It is mutually understood that this agreement is subject to necessary corrections and adjustments concerning change in net payoff on trade-in to be made at the time of settlement. 2. You and I certify that the terms of this contract are agreed to as part of this agreement, the same as at the signature.
I am purchasing the above described Unit; the optional equipment and accessories that printed above my trade is free from all claims, except as noted.
3. This agreement contains the entire understanding between you and me and no other representation or inducement, verbal or written, has been made which is not contained in this contract. 4. Insurance against liability for bodily injury or property damage to others is not included in this transaction.

I, or we, acknowledge receipt of a copy of this order and that I, or we, have read and understand this agreement.

2/15/13

VON RO _[signature]_    Principal Buyers Signature: _[signature]_

Co-Buyer's Signature:

# EXHIBIT 9

CONSIGNMENT
AGREEMENT        2/15/13 – 5/15/13

Von Ro agrees to pay Joseph Newton

$53,000 upon sale of 2013

Woodland Park American Park

AP100L park model

VIN# 1W9BP03S9D2046733

*[signature]*

2/15/13

*[signature]*

2/15/13

# EXHIBIT 10

**APPLICATION TO TITLE/REG. A VEHICLE**
MINNESOTA DEPARTMENT OF PUBLIC SAFETY
Driver and Vehicle Services Division
445 Minnesota St., St. Paul, MN 55101-5185
Phone: (651) 297-2126  TTY: (651) 282-6555
dvs.dps.mn.gov

FOR CENTRAL OFFICE USE ONLY

| | | | | | |
|---|---|---|---|---|---|
| PLATE NUMBER | | | YEAR | VALIDATION AND OFFICE USE ONLY | |
| YEAR VALIDATION STICKER NUMBER | | | YEAR | | |
| WEIGHT STICKER NUMBER/MOTORCYCLE ENGINE NUMBER | | | | | |

**A** PURCHASER(S) OWNER(S) MUST COMPLETE

Vehicle ► Information

| DATE OF PURCHASE | NEW ☒ USED ☐ | PREVIOUS PLATE NUMBER | YEAR | EXPIRATION DATE | MONTH | YEAR | DVS CENTRAL OFFICE USE ONLY |
|---|---|---|---|---|---|---|---|
| 2 | 15 | 2013 | | | | | |

| MODEL YEAR | MAKE | BODY/MODEL TYPE | COLOR CODE | BODY | ROOF | DOT# | TRUCKS/TRAILERS EMPTY WEIGHT | # AXLES |
|---|---|---|---|---|---|---|---|---|
| 2013 | WOODLAND PARK | AP100L | | | | | | |

VEHICLE IDENTIFICATION NUMBER

| I | W | 9 | B | P | 0 | 3 | S | 9 | D | 2 | 0 | 4 | 6 | 7 | 3 | 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

☐ You may disclose my information for any use in response to requests for my individual driver or motor vehicle record.
☐ You may disclose my personal information for bulk distribution for surveys, marketing or solicitations.

**PURCHASER(S) OWNER(S) Information** ►

| LAST, FIRST, AND MIDDLE NAME | DRIVER'S LICENSE NUMBER/DEALER NUMBER | DATE OF BIRTH |
|---|---|---|
| NEWTON JOSEPH J | | 1972 |
| ADDITIONAL PURCHASER(S)/OWNER(S) LAST, FIRST, AND MIDDLE NAME | DRIVER'S LICENSE NUMBER | DATE OF BIRTH |

| STREET ADDRESS | CITY | COUNTY | STATE | ZIP CODE |
|---|---|---|---|---|
| 13992 WELLINGTON DRIVE | EDEN PRAIRIE | HENNEPIN | MN | 55347 |

| DAYTIME TELEPHONE NUMBER | MINNESOTA COUNTY OR OTHER STATE WHERE VEHICLE IS KEPT |
|---|---|
| 612-720-4847 | HENNEPIN |

**B** PURCHASER(S) OWNER(S) MUST COMPLETE

| IS THIS VEHICLE SUBJECT TO SECURITY AGREEMENT(S)? | YES ☒ | NO ☐ | IF YES, COMPLETE SECTION B. |
|---|---|---|---|
| FIRST SECURED PARTY (PRINT NAME) | | DATE OF LOAN | FOR ADDITIONAL SECURED PARTIES, ATTACH COMPLETED FORM PS2017 |
| BMO Harris Bank N.A. | | 2/15/2013 | |
| STREET ADDRESS | CITY | STATE | ZIP CODE |
| P O BOX 660310 | Sacramento | CA | 95866 |

**C** SELLER(S) MUST COMPLETE AND SIGN

ODOMETER DISCLOSURE STATEMENT. I (WE) CERTIFY THAT THE ODOMETER

NOW READS _____ (NO TENTHS) MILES AND TO THE BEST OF MY KNOWLEDGE THE ODOMETER MILEAGE IS:
☒ ACTUAL MILEAGE
☐ IN EXCESS OF ODOMETER'S MECHANICAL LIMITS
☐ NOT ACTUAL MILEAGE - WARNING ODOMETER DISCREPANCY

DAMAGE DISCLOSURE STATEMENT. TO THE BEST OF MY KNOWLEDGE THIS VEHICLE
☐ HAS  ☐ HAS NOT  (CHECK ONE)  SUSTAINED DAMAGE IN EXCESS OF 80 PERCENT ACTUAL CASH VALUE.

ASSIGNMENT: I (WE) CERTIFY THAT THIS VEHICLE IS FREE FROM ALL SECURITY INTERESTS. I (WE) WARRANT TITLE AND ASSIGN THE REGISTRATION TAX AND VEHICLE TO THE PERSON(S) NAMED ABOVE.

Von Ro Corporation

SELLER'S PRINTED NAME(S)

| | 2/15/2013 |
|---|---|
| | DATE OF SALE |

536 Clark Street, Mora, MN 55051

SELLER'S ADDRESS

DEALER LICENSE #

X _____

ALL SELLER'S SIGNATURE(S)

**D** PURCHASER(S) OWNER(S) MUST COMPLETE AND SIGN

| PURCHASER'S MOTOR VEHICLE SALES TAX DECLARATION | | BASE VALUE OR GROSS WEIGHT: | | REGISTRATION TAX + | $ |
|---|---|---|---|---|---|
| 1. FULL PURCHASE PRICE | $ 49,823 00 | | | PLATE FEE | |
| 2. LESS TRADE-IN ALLOWANCE COMPLETE ITEM NO. 8 | $0 00 | REGISTRATION PERIOD FROM  THROUGH | | ARREARS TAX | |
| 3. NET PURCHASE PRICE | $49,823 00 | CHANGE OF GROSS VEHICLE WEIGHT | | | |
| 4. ____% OF LINE 3 | $2,226 59 | TIME OF CHANGE  :  HOURS | | PUBLIC SAFETY VEHICLE FEE | |
| 5. LESS TAX PAID TO ANOTHER STATE | $ | DATE OF CHANGE | | TRANSFER TAX | |
| NET SALES TAX DUE | | | | TITLE/TRANSFER FEE | $60.00 |
| 6. TRADE-IN WAS       MAKE       PLATE NUMBER | | DATE CHANGE | | MOTOR VEHICLE SALES TAX | |
| MODEL YEAR | | | | LATE TRANSFER PENALTY | |
| MN DEALER LICENSE # | | CHANGE EXPIRES | | SUB-TOTAL | $ |
| MN SALES TAX ACCOUNT # | | CHANGE OF WEIGHT AND/OR CLASS | | STATE/DEPUTY FILING FEE | |
| INTERNAL REVENUE CODE # (IRC) | | FROM  TO | | TOTAL DUE | $ |
| PRORATE ACCOUNT # (Sales tax due when registered) | | | | | |

I DECLARE THIS TAX EXEMPTION CODE: _____

I (WE) CERTIFY I (WE) ARE OF LEGAL AGE, HAVE PURCHASED THIS VEHICLE SUBJECT TO LIENS SHOWN AND NO OTHER. THIS VEHICLE IS AND WILL CONTINUE TO BE INSURED WHILE OPERATING UPON THE PUBLIC STREETS AND HIGHWAYS. THE VEHICLE WILL BE OPERATED IN COMPLIANCE WITH THE LAWS THAT APPLY TO ITS CLASS OF REGISTRATION. I (WE) HAVE RECEIVED A COPY OF THIS APPLICATION AND ALL OF MY (OUR) DECLARATIONS ARE TRUE AND CORRECT. IF APPLICABLE, I (WE) HAVE KNOWLEDGE OF AND COMPLY WITH FEDERAL REGULATIONS APPLICABLE TO COMMERCIAL VEHICLE OPERATION, MINNESOTA STATUTES, CHAPTER 221, PUBLIC SERVICE COMMISSION RULES 1 THROUGH 48, AND CODE OF FEDERAL REGULATIONS, TITLE 49, PARTS 390 THROUGH 399, AND IF A TRANSPORTER OF HAZARDOUS MATERIALS, CODE OF FEDERAL REGULATIONS, TITLE 49, PARTS 171 TO 199.

WITHOUT PROPER OWNERSHIP/TRANSFER DOCUMENTS (e.g., OUT-OF-STATE CERTIFICATE OF TITLE), NO MINNESOTA TITLE WILL BE ISSUED.

| X | 2/15/2013 |
|---|---|
| | DATE |
| X | N/A |
| SIGNATURE(S) ALL PURCHASERS/OWNERS MUST SIGN | DATE |

DO NOT SIGN UNTIL COMPLETED

PS2000-36 (08/12)

- over -

Title Application-MN
Wolters Kluwer Financial Services

MV-1-MN 10/19/2012
VMPC170MN (1210).00

| PURCHASER(S) OWNER(S) MUST COMPLETE WHEN | A VEHICLE ACQUIRED BY A MINNESOTA RESIDENT WHO WAS NOT A RESIDENT WHEN THE VEHICLE IS OPERATED ON A MINNESOTA STREET OR HIGHWAY. AN AUTOMOBILE BROUGHT INTO MINNESOTA BY A NON-RESIDENT MUST BE REGISTERED WITHIN 60 DAYS; HOWEVER, IF THE FOREIGN STATE VEHICLE IS NOT CURRENTLY REGISTERED, THE VEHICLE MUST BE REGISTERED IMMEDIATELY. TAX FOR THE NON-RESIDENT IS COMPUTED FROM THE APPLICATION DATE OR 60 DAYS AFTER THE VEHICLE IS BROUGHT INTO MINNESOTA, WHICHEVER IS FIRST. TAX ON A TRUCK IS DUE AND COMPUTED FROM THE APPLICATION DATE OR THE DATE THE VEHICLE IS BROUGHT INTO MINNESOTA, WHICHEVER IS FIRST. |
|---|---|

| **E** REGISTERING A VEHICLE FROM ANOTHER STATE | DATE THIS VEHICLE FIRST BROUGHT INTO MINNESOTA | THIS VEHICLE WAS? NEW ☐ USED ☐ | WERE YOU A MINNESOTA RESIDENT AT THE TIME OF PURCHASE? YES ☐ NO ☐ |
|---|---|---|---|

**F**

I CERTIFY BY MY SIGNATURE I HAVE PURCHASED THE VEHICLE DESCRIBED ON THE APPLICATION. CHECK ■ APPROPRIATE BOX.

UNDER LEGAL AGE

☐ I AM 17 YEARS OLD AND HAVE COMPLETED AN APPROVED DRIVER TRAINING COURSE.

☐ I AM 17 YEARS OLD AND A HIGH SCHOOL GRADUATE.

☐ I AM AN EMPLOYED, EMANCIPATED MINOR AND I HAVE A MINNESOTA DRIVER'S LICENSE.

☐ WHEN I WAS A PURCHASER OF A FOREIGN STATE, I WAS THE DULY REGISTERED OWNER OF THE AUTOMOBILE OR TRUCK DESCRIBED ON THIS APPLICATION. (COMPLETE SECTION E)

| PURCHASER(S) OWNER(S) MUST COMPLETE | **G** | BY LAW, THE TYPE, AND IN SOME CASES THE USE, OF YOUR VEHICLE DETERMINES WHICH REGISTRATION CLASS (PLATE) IS PROPER. THE FOLLOWING IS A BRIEF DESCRIPTION OF THE LAW WHICH APPLIES TO THE CLASSES OF REGISTRATION. PLEASE CHECK THE BOX CORRESPONDING TO THE PROPER CLASS FOR YOUR VEHICLE. |
|---|---|---|

**VEHICLE TYPE**    **CLASS**    **EXPLANATION OF REGISTRATION CLASSES**

### AUTOMOBILES AND STATION WAGONS

**PASS**   ☐ ALL PASSENGER AUTOMOBILES AND VANS, STATION WAGONS, AMBULANCES, AND HEARSES. ALSO ALL PICKUP TRUCKS WITH A MANUFACTURER'S RATED CAPACITY OF 3/4 TON OR LESS.

### BUSES

**BDU**   ☐ DULUTH TRANSIT BUS     **BY** ☐ CHARTER BUS     **IC** ☐ INTERCITY BUS

**2C**   ☐ BUS OPERATED IN CITIES OF LESS THAN 70,000 POPULATION     **SB** ☐ BUS USED EXCLUSIVELY FOR TRANSPORTING STUDENTS (MUST BE INSPECTED PRIOR TO REGISTRATION)

### MOTORCYCLES AND MOPEDS

**M**   ☐ ALL MOTORCYCLES, MOTORBIKES, MINIBIKES, AND MOTORSCOOTERS. ENGINE NUMBER REQUIRED ON FRONT OF FORM.

**MP**   ☐ ALL MOTORIZED BICYCLES, WHICH DO NOT EXCEED 50 CUBIC CENTIMETERS OR 2 BRAKE HORSEPOWER.

### RECREATIONAL

**RV**   ☐ SELF-PROPELLED VEHICLE IS A VEHICLE WITH PERMANENTLY INSTALLED LIFE SUPPORT SYSTEMS DESIGNED TO BE USED FOR TEMPORARY LIVING QUARTERS WHILE ENGAGED IN RECREATIONAL OR VACATION ACTIVITIES WHICH USES THE PUBLIC STREETS OR HIGHWAYS INCIDENTAL TO SUCH ACTIVITIES AND IS NOT USED AS THE RESIDENCE OF THE OWNER OR OCCUPANT. AT LEAST FOUR OF THE FOLLOWING LIFE SUPPORT SYSTEMS MUST BE PRESENT, TWO OF WHICH ARE 1, 2 OR 3.

    1. COOKING WITH LIQUID PROPANE GAS SUPPLY. 2. POTABLE WATER SUPPLY INCLUDING SINK AND FAUCET. 3. SEPARATE 110-125 VOLT ELECTRICAL POWER SUPPLY. 4. HEATING OR AIR CONDITIONING SEPARATE FROM VEHICLE ENGINE. 5. REFRIGERATOR - ELECTRIC OR PROPANE. 6. TOILET — SELF-CONTAINED OR CONNECTED TO A PLUMBING SYSTEM.

**RL**   ☐ TOWED VEHICLE USED FOR TEMPORARY LIVING QUARTERS WHILE ENGAGED IN RECREATIONAL OR VACATION ACTIVITIES WHICH USES THE PUBLIC STREETS OR HIGHWAYS INCIDENTAL TO SUCH ACTIVITIES, AND NOT USED AS THE RESIDENCE OF THE OWNER OR OCCUPANT. LIMITED TO TRAILERS UP TO 102" IN WIDTH AND 45' IN LENGTH.

### TRAILERS

**ST**   ☐ ALL SEMI-TRAILERS PERMANENT PLATE.

**CT**   ☐ TRAILER WITH A GROSS WEIGHT OF MORE THAN 3,000 POUNDS (EXCEPT THOSE REGISTERED IN THE B (UTILITY), RECREATIONAL, FARM OR SEMI-TRAILER CLASSES) OR AN EQUIPMENT DOLLY USED TO TRANSPORT THE OWNER'S CONSTRUCTION MACHINERY, EQUIPMENT, IMPLEMENTS AND OTHER OBJECTS USED IN A CONSTRUCTION PROJECT, BUT NOT TO BE INCORPORATED IN OR TO BECOME A PART OF A COMPLETED PROJECT.

**FT**   ☐ FARM TRAILER WITH A GROSS WEIGHT IN EXCESS OF 10,000 POUNDS DRAWN BY A PASSENGER AUTOMOBILE OR FARM TRUCK. USED EXCLUSIVELY FOR TRANSPORTING AGRICULTURAL PRODUCTS FROM FARM TO FARM AND TO AND FROM THE USUAL MARKET, MAY BE REGISTERED ON AN ANNUAL OR QUARTERLY BASIS.

**B**   ☐ TRAILER WITH A MAXIMUM GROSS WEIGHT OF 3,000 POUNDS EXCEPT THOSE REGISTERED IN THE RECREATIONAL OR FARM CLASSES). PERMANENT REGISTRATION.

**(NOT PLATED)**   ☐ PARK TRAILER (USED FOR TEMPORARY LIVING QUARTERS) EXCEEDS 8-1/2" IN WIDTH BUT IS NO LARGER THAN 400 SQ. FT. (NOTE: PARK TRAILERS NOT USED ON THE HIGHWAYS DURING THE CALENDAR YEAR SHALL BE TAXED AS MANUFACTURED HOMES.)

**(NOT PLATED)**   ☐ MANUFACTURED HOMES ANY TRAILER OR SEMI-TRAILER WHICH IS DESIGNED, CONSTRUCTED, AND EQUIPPED FOR USE AS A HUMAN DWELLING PLACE, LIVING ABODE, OR LIVING QUARTERS. THE MANUFACTURED HOME IS 320 SQ. FT. OR MORE WHEN ERECTED ON SITE.

### TRUCKS

☐ CHECK HERE IF VEHICLE IS A TRUCK-TRACTOR.

**T** †   ☐ GROSS WEIGHT TRUCKS USED EXCLUSIVELY BY THE OWNER, TO TRANSPORT FARM PRODUCTS OR PERSONAL PROPERTY FROM FARM TO MARKET OR TO TRANSPORT PROPERTY AND SUPPLIES TO THE OWNER'S FARM OR OCCASIONALLY USED TO TRANSPORT UNPROCESSED AND RAW FARM PRODUCTS NOT PRODUCED BY THE OWNER OF THE TRUCK FROM THE PLACE OF PRODUCTION TO MARKET WHEN SUCH TRANSPORTATION CONSTITUTES THE FIRST HAUL OF SUCH PRODUCTS, OR USED TO TRANSPORT RAW AND UNFINISHED FOREST PRODUCTS HARVESTED BY THE TRUCK OWNER FROM THE PLACE OF PRODUCTION TO AN ASSEMBLY YARD OR RAIL HEAD WHEN SUCH TRANSPORTATION CONSTITUTES THE FIRST HAUL THEREOF, OR USED TO TRANSPORT MILK AND/OR CREAM FROM A FARM TO AN ASSEMBLY POINT OR PLACE OF FINAL MANUFACTURE AND/OR FROM AN ASSEMBLY POINT FOR FINAL PROCESSING OR MANUFACTURE PROVIDING THE TRUCK IS A SINGLE UNIT TRUCK AND SOLELY CONSTRUCTED FOR SUCH USE. FARM TRUCKS MAY BE REGISTERED ON AN ANNUAL OR QUARTERLY BASIS.

**CZ** †   ☐ TRUCKS USED ONLY IN THE COMMERCIAL ZONE.

    FOR CZ REGISTRATION ENTER LCC OR ICC PERMIT NUMBER HERE _____

**Y** †   ☐ ALL GROSS WEIGHT TRUCKS EXCEPT THOSE REGISTERED IN THE FARM OR COMMERCIAL ZONE CLASS

**NOTE:** TRAILERS AND TRUCKS REGISTERED ON A GROSS WEIGHT BASIS MUST BE REGISTERED AT A MINIMUM OF 1.25 TIMES THE EMPTY WEIGHT.

† FOR TRUCKS REGISTERED AT 78,000 OR HIGHER, MUST DECLARE THE NUMBER OF AXLES ON THE FRONT OF THIS APPLICATION NEXT TO THE OWNER'S SIGNATURE.

### UNIQUE CLASSES   FOR CLASSIC, COLLECTOR, STREET ROD & PIONEER, PLEASE INDICATE DESIRED NUMBER OF PLATES:   ONE PLATE ☐   TWO PLATES ☐

**CL**   ☐ CLASSIC CAR AS DEFINED BY LAW (M.S. 168.10), AND OWNED AND OPERATED SOLELY AS A COLLECTOR'S ITEM AND NOT FOR GENERAL TRANSPORTATION PURPOSES.

**COL**   ☐ COLLECTOR VEHICLE IS A VEHICLE WHICH IS AT LEAST 20 MODEL YEARS OLD AND MANUFACTURED AFTER 1935 AND OWNED AND OPERATED SOLELY AS A COLLECTOR'S ITEM AND NOT FOR GENERAL TRANSPORTATION PURPOSES. TO REGISTER A VEHICLE IN THE COLLECTOR CLASS, THE OWNER OF THE VEHICLE MUST HAVE ONE OR MORE VEHICLES WITH REGULAR LICENSE PLATES.

    REGULAR LICENSE PLATE NUMBER OF THE OTHER VEHICLE OWNED OR LEASED BY YOU _____

**SR**   ☐ STREET ROD IS A MOTORIZED VEHICLE MANUFACTURED PRIOR TO 1949 OR DESIGNED AND MANUFACTURED TO RESEMBLE SUCH VEHICLE AND OWNED AND OPERATED SOLELY AS A STREET ROD AND NOT FOR GENERAL TRANSPORTATION PURPOSES. TO REGISTER A VEHICLE AS A STREET ROD, THE OWNER OF THE VEHICLE MUST HAVE ONE OR MORE VEHICLES WITH REGULAR LICENSE PLATES.

    REGULAR LICENSE PLATE NUMBER OF THE OTHER VEHICLE OWNED OR LEASED BY YOU _____

**P**   ☐ PIONEER VEHICLE IS A VEHICLE MANUFACTURED PRIOR TO 1936 WHICH IS OWNED AND OPERATED SOLELY AS A COLLECTOR'S ITEM AND NOT FOR GENERAL TRANSPORTATION PURPOSES.

**TE**   ☐ TAX EXEMPT ALL VEHICLES REQUIRED TO DISPLAY TAX-EXEMPT LICENSE PLATE(S) MUST HAVE THE NAME OF THE STATE DEPARTMENT OR POLITICAL SUBDIVISION, NONPUBLIC HIGH SCHOOL OPERATING A DRIVER EDUCATION PROGRAM, OR LICENSED COMMERCIAL DRIVING SCHOOL, PLAINLY DISPLAYED ON BOTH SIDES OF THE VEHICLE; EXCEPT THOSE EXEMPTED BY M.S. 168.012. FOR MORE INFORMATION REGARDING THE MARKING OR EXEMPTION REQUIREMENTS PLEASE CALL DVS AT (651) 205-4062.

**FOR ADDITIONAL INFORMATION, CONTACT A DEPUTY REGISTRAR OR THE DEPARTMENT OF PUBLIC SAFETY**

Title Application-MN
Wolters Kluwer Financial Services

MV-1-MN 10/19/2012
VMPC170MN (12101.00)

# EXHIBIT 11



**BMO** Harris Bank

A part of BMO Financial Group

BMO Harris Bank
1780 Highway 36 West
Roseville, MN 55113-4030

Tel: 651-288-6300
Fax: 651-288-6320

September 25, 2013

To Whom It May Concern:

Joseph J. Newton holds an Installment loan here at BMO Harris Bank for a Woodland Park AP100L.

**Open Date:** 2/15/2013

**Original Loan amount:** $44,159.59

**Current Payoff Amount:** $43,118.33

**Last four digits of loan #** 9642

VIN # 1W9BP03S9D2046733

**Term:** 180 months

If you have any questions please feel free to give me a call.

LaTrice Bryant | Personal Banker
BMO Harris Bank | 1780 HWY 36 West | Roseville, MN 55113
Latrice.bryant@bmo.com
(T) 651-288-6307 | (F) 651-288-6320 | (M) 651-288-6300

# BMO Harris Bank

## Loan/Line Transaction History

Date Printed:9/25/2013

Account Title:
JOSEPH J NEWTON

Last 4 Digits of Loan/Line Number:  9642

| Post Date | Effective Date | Description | Amount | Interest | Principal | Fees | Principal Balance |
|---|---|---|---|---|---|---|---|
| 09/16/2013 | 09/16/2013 | REGULAR PAYMENT | 366.71 | 217.81 | 148.90 | | 43,057.29 |
| 08/15/2013 | 08/15/2013 | REGULAR PAYMENT | 366.71 | 198.18 | 168.53 | | 43,206.19 |
| 07/18/2013 | 07/18/2013 | REGULAR PAYMENT | 366.71 | 246.67 | 120.04 | | 43,374.72 |
| 06/11/2013 | 06/11/2013 | REGULAR PAYMENT | 366.71 | 220.00 | 146.71 | | 43,494.76 |
| 06/05/2013 | 06/05/2013 | USER MEMO 2 ADD | 0.00 | | | | 0.00 |
| 05/10/2013 | 05/10/2013 | REGULAR PAYMENT | 366.71 | 200.14 | 166.57 | | 43,641.47 |
| 04/11/2013 | 04/11/2013 | REGULAR PAYMENT | 366.71 | 187.09 | 179.62 | | 43,808.04 |
| 03/15/2013 | 03/15/2013 | REGULAR PAYMENT | 366.71 | 194.78 | 171.93 | | 43,987.66 |
| 02/25/2013 | 02/22/2013 | FDI TRAN SENT  FLD = COLLAT STAT  NEW = IP | 0.00 | | | | 0.00 |
| 02/15/2013 | 02/15/2013 | LOAN FUNDING | 44,159.59 | | 44,159.59 | | 44,159.59 |

BMO Harris Bank N.A. Member FDIC

Page 1 of 2

The information on this Loan/Line Transaction History is for the informational purposes only. All account information is subject to verification and adjustment when appropriate.
This is not intended to serve as your monthly statement. For current account information please contact customer service at 1-800-207-3058, visit us online at
www.harrisbank.com or visit your local branch office.

BUC#:09653            By:lbryant            Date:9/25/2013            Form:HLF-XAM-TX.0513            Work Item ID:

**BMO** **Harris Bank**

## Loan/Line Transaction History

| Post Date | Effective Date | Description | Amount | Interest | Principal | Fees | Principal Balance |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

BMO Harris Bank N.A. Member FDIC

The information on this Loan/Line Transaction History is for the informational purposes only. All account information is subject to verification and adjustment when appropriate. This is not intended to serve as your monthly statement. For current account information please contact customer service at 1-800-207-3058, visit us online at www.harrisbank.com or visit your local branch office.

BUC#:09653      By:Bryant      Date:9/25/2013      Form:HLF-XAM-TX.0513      Work Item ID:

Page 2 of 2

# EXHIBIT 12

2/13/2013   32590   $1,350.00



2/13/2013   32591   $2,484.06



2/13/2013   32592   $964.16



2/21/2013   32594   $44,158.40



2/27/2013   32595   $2,000.00



2/26/2013   127358   $215.57